THE JENNINGS FARMS *v.* WATSON-HIGGINS MILLING CO.

SALES—PLEADINGS—ISSUE PRESENTED.
In an action for the purchase price of a car load of wheat, where defendant admitted receiving the wheat but claimed that the original contract was canceled and the wheat received to be disposed of on commission, which was disputed by plaintiff, the issue as to whether the wheat was received under the original contract or under a substituted one was properly submitted to the jury.

Error to Newaygo; Barton (Joseph), J. Submitted February 7, 1922. (Docket No. 113.) Decided March 30, 1922.

Assumpsit by The Jennings Farms against the Watson-Higgins Milling Company for the purchase price of certain wheat. Judgment for plaintiff. Defendant brings error. Affirmed.

*Rolland J. Cleland,* for appellant.

*William J. Branstrom,* for appellee.

MOORE, J.   The declaration in this case contains two counts in assumpsit.   The suit was brought to recover the purchase price of a car load of wheat sold by plaintiff to defendant.   The plea was the general issue with a notice thereunder.

"that the car load of wheat in question was purchased September 20th, for shipment on or before ten days from date; that it was not so delivered, and notice of cancellation was given by telephone; that a new agreement was made by which the said car load of grain was consigned to defendant to be handled for the account of the plaintiff."

The original sale was made by telephone.   This was followed by a letter reading:

"JENNINGS FARM,
   Bailey, Mich.
   "*Gentlemen:*   We are pleased to confirm the following purchases from you today by
   "Cars, 1; Bushels 1,500; Commodity, No. 2 Red Rock Wheat; Price $2.38; F. O. B., Bailey; Time shipment, Prompt.
   "Destination lot and inspection final.   Under Federal supervision when obtainable.   Our option to cancel purchases or buy for your account if shipments are not made in contract time.   Make draft on us here, leaving a margin of . . . . . . . . . . . . cents per bushel to cover contingencies in weight and grade.   To insure payment of drafts, be sure that proper ROUTE and RATE appear on Bill of Lading.   If above is not as understood please wire us at once.   Please draw at sight through Kent State Bank.
                          "Yours truly,
                     "WATSON-HIGGINS MILLING CO.
                     "Grand Rapids, Mich., Sept. 20, 1920.
   "Per L.H.H."

Early in the trial a colloquy occurred as follows:

"*The Court:*   Now Mr. Cleland, the declaration in this case which avers and sets forth sufficiently I assume. because you raise no objection to it in your pleadings, you plead the general issue, and then you give notice which reads as follows:

" 'Please take notice that the defendant will give in evidence and insist under the general issue that the car load of wheat in question was purchased September 20th for shipment on or before ten days from date; that it was not so delivered and notice of cancellation was given by telephone; that the new agreement was made by which the said car'load of grain was consigned to the defendant to be handled for the account of plaintiff; that defendant is not liable to plaintiff in any sum or amount except on the sale of said grain and then only if he can realize on said sale less usual commission charge.'

"Now I assume that the declaration and your pleadings frame an issue to this effect as to whether or not you received that car by virtue of the original contract or whether you now have it or hold it by virtue of a new agreement.   Now that is all there is to this law suit as I see it.   Am I right?   You received it, you accepted 1,221 bushels and 40 pounds of wheat.

"*Mr. Cleland:* Yes—

"*The Court:* Either upon the original terms or commission basis.   Now that is the issue, is it not?

"*Mr. Cleland:* Yes.   If accepted upon the commission basis you understand.   Our contention is we didn't accept it as a purchase.

"*The Court:* I understand.

"*Mr. Cleland:* We sold it for the best price obtainable and settled with them on the price received.

"*The Court:* Yes.   That is the question to go before this jury.   *   *   *

"*Mr. Cleland:* When we sent him a written confirmation which if it wasn't satisfactory shouldn't have been accepted.

"*The Court:* You admit receiving 1,221 2/3 bushels grain, don't you.   You got possession of it by virtue of the original contract or you got possession of it on a commission basis haven't you, one or the other?

"*Mr. Cleland:* Sure."

Later counsel was allowed to show that in the grain and milling business "Time shipment, prompt" meant ten days and plaintiff gave testimony to that effect.

Counsel devotes a good deal of space in the brief in arguing assignments of errors in relation to not allowing the jury to pass upon the effect of the custom in

the trade, and whether the shipment should have been made in ten days, and the plaintiff's testimony that the grain was to be shipped as soon as a car could be obtained, that the car was spotted October 5th, that it was promptly loaded, and on October 9th was started on its destination, and a bill of lading sent to defendant.

The record shows that the bill of lading was received by the defendant, and the car re-consigned by the defendant to Baltimore, Maryland, for the export trade.

Testimony was also given to the effect that plaintiff and farmers generally had no knowledge that "prompt shipment" meant in ten days.

The judge finally charged the jury:

"It is conceded by both parties that a car of wheat was loaded, put on the track on the 9th day of October, 1920; that the original transaction was entered into by virtue of a telephone conversation on the 20th day of September and the confirmation I believe bears date as of that date, and received by the plaintiff in this case at a subsequent date, it is immaterial when.

"I charge you as a proposition of law that that contract remained in full force and effect regardless of the wording thereof until such time as the defendant in this case cancelled it. There is no testimony in this case that he undertook to cancel it until some time during the 9th day of October, 1920.

"I charge you that as a proposition of law that when the delivery was made of the wheat to the railroad company it was in compliance with the contract if the contract still remained in force, and the delivery of the wheat to the railroad company passed the title to the defendants. * * *

"Now it is the theory of the plaintiff that all of this contract was carried out; that the wheat was delivered prior to any cancelling or any attempt to cancel or any conversation having occurred between the parties subsequent to the making of the contract and the receipt of the confirmation.

"Now it is the theory of the defendant that on

that day * * * in a telephone conversation they entered into what is known as a substituted agreement.

"Having charged you as a proposition of law that they could not cancel after the delivery to the railroad company, but it is the theory of the defendant that they had a telephone conversation whereby he said to the seller, the plaintiff herein, Mr. Grimshaw, that he would have to cancel it, that he would cancel it, that he wouldn't receive the grain except upon a commission basis, to which expressly and by implication the plaintiff herein agreed to, and therefore it is the theory of the defendant that they received the grain by virtue of a substituted agreement upon a commission basis.

"Now gentlemen, that is the only fact that remains for you to find. * * * If you find that there was no substituted agreement, I instruct you that it would be your duty to return a verdict here in favor of the plaintiff. * * *

"*The Court:* So, if there was no substituted agreement your verdict would be in favor of the plaintiff and the form of your verdict would be, 'We find in favor of the plaintiff and assess his damages at the sum of $2,907.56.'

"If, on the other hand, you find it to be a fact from the evidence in the case, that they have possession of it by virtue of a substituted agreement to handle it upon a commission basis, in that case the form of your verdict would be, 'No cause of action.' "

The judge was right in holding that the issue was a very simple one, to-wit, Was the wheat shipped and received under the original contract, or was it, as defendant claimed, received under a substituted agreement? In that regard the testimony was in sharp conflict. The judge submitted that question to the jury under a fair charge, and the jury found in favor of the contention of the plaintiff.

The judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.